### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### Newport News Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 4:20cr49–HEH |
| | ) | |
| JULIAN DARBY BRUNDIDGE, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION
#### (Defendant's Motion to Suppress Evidence)

This matter is before the Court on Defendant Julian Darby Brundidge's

("Defendant") Motion to Suppress (ECF No. 14).  Defendant has moved to suppress all

evidence seized by officers on February 27, 2020 from Defendant's person and his

apartment, as well as his statements to law enforcement. [1]  He contends that Newport

News police ("NNP") officers had no justification to either detain him or open the door to

his apartment.  Both Defendant and the United States have filed memoranda supporting

their respective positions, and the Court heard evidence and oral argument on November

9, 2020.  For the reasons that follow, the Court will deny Defendant's Motion to

Suppress.

---

[1] Defendant in his Motion seeks to suppress evidence obtained from the inventory search of his vehicle.  However, at oral argument Defendant did not put forth any evidence on this issue and the Government asserted that no evidence obtained during the inventory search would be used in this case.  Therefore, this Court need not make any findings as to this issue.

## I.   BACKGROUND

The evidence revealed that a confidential informant contacted NNP Task Force

Officer Brian Torrez ("Officer Torrez") on February 27, 2020, and informed him that

Defendant—a heavyset, approximately 5' 9" black male wanted by law enforcement—

was located in the King's Ridge Apartments complex.  The confidential informant was a

NNP "certified" informant.  According to NNP procedures, the confidential informant

became a "certified" confidential informant by meeting established NNP requirements,

which include a history of providing information later verified by independent

investigation.  The informant further specified that Defendant lived in Apartment 445 on

North Chalice Court in Newport News, Virginia.  Officer Torrez entered the address into

a law enforcement database, "LiNX," and confirmed that Defendant had outstanding

warrants in Suffolk, Virginia.  Officer Torrez and Sergeant Kevin Nichol ("Sergeant

Nichol") of NNP began surveillance of Apartment 445 in one vehicle and planned an

approach of the residence with other nearby NNP officers in a different vehicle, in the

event that Officer Torrez and Sergeant Nichol observed Defendant.

At approximately 8:00 p.m., Officer Torrez and Sergeant Nichol observed an

individual matching the description provided by the confidential informant leaving

Apartment 445 with a dog on a leash.  This information was conveyed to the other nearby

NNP officers, who drove to the apartment, got out of their vehicle, and approached

Defendant.  The NNP officers detained Defendant on the sidewalk in front of Apartment

445 by placing him in handcuffs.  While detaining Defendant, the officers detected the

scent of marijuana emanating from Defendant's person.  Shortly after the officers

2

detained Defendant, Officer Torrez and Sergeant Nichol joined the other NNP officers on the scene. Initially Defendant gave a false name to officers. However, the officers were able to visually confirm that the detained individual was the Julian Brundidge with warrants in Suffolk by comparing the individual with Defendant's information and picture on the LiNX database. When the officers later called Defendant "Julian" and Defendant responded, he admitted that was his name. After confirming Defendant's outstanding warrants and detecting the smell of marijuana, officers searched Defendant and found two cell phones, a set of keys, and some U.S. currency.

While the officers were searching Defendant, he advised the officers that a seven year-old child was alone in Apartment 445. Defendant referred to the child as his daughter, but later told officers that the child is not his biological daughter. Sergeant Nichol then went to the apartment and opened the unlocked door to check on the child. Sergeant Nichol detected the odor of marijuana emanating from the apartment as he approached the front door, and the officers also detected the odor of marijuana after Sergeant Nichol opened the apartment door. Sergeant Nichol put one foot into the apartment entrance to call to the child. The child came down the apartment stairs and outside. The officers did not enter the apartment until after obtaining a search warrant for the residence based on the odor of suspected marijuana originating from inside. When officers executed the search warrant, they discovered a firearm and some quantities of substances later determined to be marijuana and cocaine. After conducting the search of Apartment 445, officers questioned Defendant about the items seized.

3

During the evidentiary hearing, portions of body-worn camera videos from NNP were played, and both sides argued that the videos supported their position on the Motion to Suppress before the Court.

## II.    ANALYSIS

Defendant's challenge begins with the initial encounter outside of Apartment 445. Defendant argues that he was illegally detained and thus any resulting evidence must be suppressed, including items seized from the search of his person and the subsequent search of his home, as well as information provided during questioning. The Government responds that the totality of the circumstances gave the officers reasonable suspicion to briefly detain Defendant pending confirmation that the detained individual was the Julian Brundidge for whom there were outstanding warrants. As the officers had reasonable suspicion for the initial detention based on the confidential informant's corroborated tip, the Government asserts that the subsequent searches and seizure of evidence were reasonable.

Reasonable suspicion is an objective standard, and the Court considers the totality of the circumstances to determine if the officer had a "reasonable, articulable suspicion that criminal activity" had occurred or was in progress. *Illinois v. Wardlow*, 528 U.S. 119, 123–24 (2000). "[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry v. Ohio*, 392 U.S. 1, 27 (1968). Information obtained through a tip from a confidential informant that carries "enough

4

indicia of reliability" may alone provide the reasonable suspicion to support a *Terry* stop. *Adams v. Williams*, 407 U.S. 143, 146–47 (1972) (finding that information carried sufficient indicia of reliability when informant was known to law enforcement, had provided information in the past, and came forward personally to give information that was immediately verifiable at the scene). "Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability." *Id.* at 147.

Tip reliability is assessed by the totality of the circumstances, including the informant's history of providing reliable information and the accuracy and specificity of the tip. *See, e.g.*, *Alabama v. White*, 496 U.S. 325, 330–31 (1990) (finding that an anonymous tip was sufficiently corroborated when the caller correctly predicted that a woman would leave an apartment building and get into a particular vehicle even though the caller incorrectly gave a different name and apartment number for the individual); *United States v. Kehoe*, 893 F.3d 232, 238–39 (4th Cir. 2018) (finding that an informant's tip was reliable when the informant provided his first name and phone number and gave police information that was corroborated by independent investigation); *United States v. Lalor*, 996 F.2d 1578, 1581 (4th Cir. 1993) (finding tips from two informants sufficiently corroborated when the tips were consistent, specific, verified by independent investigation, and one of the informants had previous dealings with the defendant).

In this case, the tip was corroborated and sufficiently reliable. The confidential informant's history of providing independently corroborated information to NNP establishes the informant's reliability. The confidential informant was familiar with

Defendant and knew that Defendant lived in Apartment 445 on North Chalice Court.  The

officers corroborated every piece of the confidential informant's tip with independent

evidence.  *See Lalor*, 996 F.2d at 1581 ("Corroboration of apparently innocent details of

an informant's report tends to indicate that other aspects of the report are also correct.").

Officer Torrez entered the address provided by the confidential informant into the LiNX

database and confirmed that the individual named by the confidential informant was

associated with that address and had outstanding warrants in Suffolk.  Furthermore, later

surveillance confirmed all the physical details supplied by the informant.  At

approximately 8:00 p.m. the same day that Officer Torrez received the tip, Officer Torrez

and Sergeant Nichol observed an individual matching the description provided by the

confidential informant exit Apartment 445.  The reliable confidential informant provided

a specific and entirely accurate tip later corroborated by independent police investigation.

Therefore, the Court finds that the officers reasonably suspected the individual that exited

Apartment 445 at approximately 8:00 p.m. on February 27, 2020, was the Julian

Brundidge for whom there were outstanding warrants, and justifiably detained him to

investigate further.

Defendant principally argues that he was illegally arrested because officers

immediately placed him in handcuffs.  However, "[i]t is well established in this circuit

that 'handcuffing a suspect . . . does not necessarily elevate a lawful [*Terry*] stop into a

custodial arrest.'"  *United States v. Ruffin*, 814 F. App'x 741, 749 (4th Cir. 2020)

(quoting *United States v. Elston*, 479 F.3d 314, 320 (4th Cir. 2007)).  "Brief, even if

complete, deprivations of a suspect's liberty do not convert a stop and frisk into an arrest

6

so long as the methods of restraint used are reasonable to the circumstances." *United States v. Crittendon*, 883 F.2d 326, 329 (4th Cir. 1989). Handcuffs may be used by law enforcement to "maintain the status quo" during a lawful *Terry* stop. *Id.* (quoting *United States v. Taylor*, 857 F.2d 210, 213 (4th Cir. 1988)).

Here, Defendant's time in handcuffs was brief before his detention became an arrest incident to his pending Suffolk arrest warrants. Defendant was in handcuffs for less than two minutes before officers visually confirmed, using the LiNX database, that the detained individual was the Julian Brundidge for whom there were outstanding warrants. Additionally, the officers' use of handcuffs was reasonable to maintain the status quo as Defendant was initially uncooperative by refusing to identify himself or provide identification. Consequently, the Court finds that, considering the totality of the circumstances, the officers had adequate reasonable suspicion to briefly detain Defendant pending confirmation that the detained individual was the Julian Brundidge for whom warrants were outstanding.

The ensuing search of Defendant's person was justified both as a search incident to arrest and the detection of the scent of marijuana. Once the officers confirmed that Defendant had outstanding warrants, the officers had probable cause to search Defendant incident to his arrest. *See, e.g., United States v. Han*, 74 F.3d 537, 541–42 (4th Cir. 1996) (discussing searches incident to arrest). However, even if Defendant did not have outstanding warrants, the officers had probable cause to search Defendant because they detected the odor of marijuana. *See, e.g., United States v. Radcliffe*, 757 F. App'x 250, 252 (4th Cir. 2018) (holding that because the police had probable cause to arrest a

7

defendant based on the odor of marijuana localized to the defendant, the police officer could validly search the defendant incident to arrest).

Defendant next argues that Sergeant Nichol unreasonably conducted a warrantless search of Defendant's apartment when he opened the door to speak to the child alone inside. Therefore, Defendant contends, all evidence obtained from the search should be suppressed because the warrant was issued based on the scent of marijuana obtained through illegal entry into the apartment.

When obtaining a warrant would delay or frustrate a "pressing mission to safely reunite [a] young child with her parents or guardian," a warrant "would not only be an inappropriate solution to this problem, but [would be] possibly counterproductive as well." *United States v. Taylor*, 624 F.3d 626, 630 (4th Cir. 2010). "[A]s a general matter, 'the absence of responsible adult supervision of children is an exigent circumstance justifying a warrantless entry.'" *Id.* at 632 (quoting *People v. Peterson*, 273 Ga. 657 (2001)).

Here, Sergeant Nichol opened the unlocked door to Apartment 445 solely to ensure the unattended seven year-old girl's safety. Defendant contends that the child was never abandoned nor in any danger, and therefore that officers had no cause to enter the apartment. However, no evidence of danger is required. *See id.* The absence of adult supervision alone creates the exigent circumstance. Defendant left the child unattended and his lawful arrest outside the apartment does not change the fact that officers necessarily opened the apartment door to secure the child's welfare. Moreover, the body-worn camera footage demonstrates that Sergeant Nichol barely crossed the apartment

8

threshold when he called for the child to come outside so that the officers could ensure her safety while her mother drove from work to the apartment. Contrary to Defendant's assertions, there is no evidence that NNP used the child's safety as a pretense to conduct an unlawful search. The Court therefore finds that any entry into the apartment was minimal, and that, because the child was alone in the apartment without any adult supervision, exigent circumstances justified entry into the apartment.

Defendant argues finally that the Government fails to establish that the search warrant was supported by probable cause. "A warrant is constitutionally sound when issued by a neutral magistrate and supported by probable cause." *United States v. Montieth*, 662 F.3d 660, 664 (2011). The magistrate, whose neutrality is not at issue here, determines whether the warrant is supported by probable cause, which is an analysis of the totality of the circumstances. Courts "must accord 'great deference' to the magistrate's assessment of the facts presented to him." *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990) (quoting *Spinelli v. United States*, 393 U.S. 410 (1969)). A magistrate may lawfully issue a warrant authorizing the search of an entire house based on a police officer's "detection of a strong odor of marijuana smoke coming from [a defendant's] house." *United States v. Jones*, 952 F.3d 153, 158 (4th Cir. 2020). In this case, the officers' detection of the odor of marijuana emanating from Apartment 445 was sufficient probable cause for a lawfully obtained search warrant. Any reasonably trained police officer would believe that, based on the information contained in the search warrant and affidavit, the magistrate lawfully issued the warrant. *See United States v.*

*Leon*, 468 U.S. 897, 923 (1984).  Therefore, the Court finds that the search warrant was amply supported by probable cause.

For the foregoing reasons, the Court finds that the officers' actions, as challenged, were reasonable under the Fourth Amendment.  Accordingly, Defendant's Motion to Suppress will be denied.

An appropriate Order will accompany this Memorandum Opinion.

/s/

Henry E. Hudson
Senior United States District Judge

Date: **Nov. 17, 2020**
Richmond, VA

10